UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JOEL CHAVEZ,

                Plaintiff,

    -against-

PANDA JIVE INC. d/b/a PENELOPE and
LUKUS HASENSTAB,

                Defendants.
------------------------------------------------------------------x

Docket No. 11 CV 6323
(JSR)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

S. TITO SINHA
Valli Kane & Vagnini, LLP
Attorneys for Defendants
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180

## TABLE OF CONTENTS

Table of Contents.................................................................................................. i

Table of Authorities ............................................................................................. i

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT.......................................................................................................... 9

    I.  Defendants' Motion for Summary Judgment Should Be Granted ............................ 9

        Legal Standard ................................................................................................... 10

        Plaintiff was an Exempt Employee Who is Not Covered Under the FLSA or NYL.....11

        Hasenstab is Not Liable as an Individual Defendant .................................................. 21

        No Evidence to Support Plaintiff's Claim that Defendants' Actions were Willful.......22

CONCLUSION.......................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

Auer v. Robbins, 519 U.S. 452 (1997)........................................................................10

Carter v. Dutchess Community College, 735 F.2d 8 (2nd Cir. 1984)..................2, 9, 11, 21, 25

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)............................................................10

Damassia v. Duane Reade, Inc., 2005 U.S. Dist. LEXIS 9768, at * 7 n.2
    (S.D.N.Y. 2005)...........................................................................................11, 22, 23

Clarke v. J.P. Morgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 33264
    at * 28 (S.D.N.Y. 2010)....................................................................................23

El v. Potter, 2004 U.S. Dist. LEXIS 24447, at *15 (S.D.N.Y. 2004)...............................23

Golden v. Merrill Lynch & Co., 2007 U.S. Dist. LEXIS 90106 at *17
    (S.D.N.Y. Dec. 6, 2007)...................................................................................10

Henderson v. Transp. Grp., Ltd., 2010 U.S. Dist. LEXIS 66109 at *1 n.1
    (S.D.N.Y. July 1, 2010)...............................................................11, 20

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2nd Cir. 1999).....................11, 21, 23

Kelly v. City of Mount Vernon, 162 F.3d 765, 768 (2nd Cir. 1998).................................10

McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).....................3, 10, 11, 22, 23

Ramos v. Baldor Specialty Foods, Inc., 2011 U.S. Dist LEXIS 66631
    at *12-13, n.3.......................................................................10, 11, 20

Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105 (2nd Cir. 2010).........11, 20

Saunders v. City of New York, F.Supp.2d 346, 358 (S.D.N.Y. 2008)..............................23

**Statutes**

29 U.S.C. § 207 ..........................................................................1, 9, 25

29 U.S.C. § 213(a)(1)..........................................1, 2, 4, 9, 10, 12, 20, 25

29 U.S.C. § 216(b)...................................................................1, 9, 25

29 C.F.R. § 541.2...........................................................................10

29 C.F.R. § 541.100(a)..............................................................10, 20

29 C.F.R. § 541.102........................................................................19

12 NYCRR § 142-2.2...............................................................1, 9, 25

## PRELIMINARY STATEMENT

Defendants Panda Jive, Inc. d/b/a Penelope ("Penelope") and Lukus Hasenstab ("Hasenstab") (collectively "Defendants") submit this Memorandum of Law ("Memorandum") in support of their motion for summary judgment to dismiss all of Plaintiff's claims as a matter of law because there is no genuine issue of any material fact in dispute that pursuant to 29 U.S.C. § 213(a)(1), Plaintiff was an exempt employee "employed in a bona fide executive… capacity." As a result, Plaintiff is not entitled to any claim for overtime compensation and liquidated damages pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), New York Labor Law and 12 NYCRR § 142-2.2.

During his employment at Penelope, Plaintiff Joel Chavez ("Plaintiff" or "Joel") was a Kitchen Manager from July 2003 through December 2006, a Bakery Manager from August 2007 through December 2009, and an Executive Kitchen Manager from December 2009 through August 2011.  As Kitchen Manager, Plaintiff was responsible for hiring, firing, setting the schedules and handling the payroll of kitchen employees which consisted of line cooks, "prep" workers and dishwashers.  Similarly as Bakery Manager, Plaintiff was responsible for hiring, firing, training and scheduling the bakery employees.  During Plaintiff's second tenure as Executive Kitchen Manager, he assumed additional managerial functions such as overseeing the efficient operation of the kitchen, overseeing internal health inspections, monitoring food consistency, food product ordering, and overseeing the food preparation schedule.  As part of his duties to manage and better organize the kitchen, Plaintiff created a kitchen manual where he diagrammed the chain of command in the kitchen area and identified himself as "Kitchen

1

Manager" who is superior to and managing other kitchen employees.  Plaintiff also identified himself as Penelope's "Executive Chef" on his Facebook page.  Furthermore, since at least December 2009, Plaintiff received a salary of $ 704.24 gross pay per week, thus exceeding the minimum required salary $ 455.00 gross pay per week needed to be considered "exempt" under 29 U.S.C. § 213(a)(1).

Defendant Hasenstab was a server and then Head Baker/Bakery Manager at Penelope from March 2004 until about December 2007 when he became its General Manager.  As General Manager, Hasenstab worked with the other managers, including Plaintiff, to oversee the restaurant's operations.  Hasenstab directly supervises, hires, fires, sets the schedule and handles the payroll for Penelope's "front-end" staff which consist of servers, busboys, hosts and hostesses while the Kitchen Manager has similar authority relative to the kitchen employees.  Hasenstab _**does not**_ have authority to hire, fire, set the schedule or pay any of Penelope's managers, including Plaintiff when he was a Kitchen Manager.  Rather, the authority to hire, fire, schedule and pay all managers belongs to Penelope's owners, one of whom is Jennifer Potenza.

Thus, Defendants also move for summary judgment to dismiss all claims against individual Defendant Hasenstab because there is no genuine issue of any material fact in dispute that pursuant to the "economic reality test" applied by the Courts in this Circuit, Hasenstab was _**not**_ an employer as defined by the Fair Labor Standards Act ("FLSA").  Carter v. Dutchess Community College, 735 F.2d 8 (2nd Cir. 1984).

Finally, Defendants also move for summary judgment to bar any FLSA claims Plaintiff may have under a three-year limitations period alleging that Defendants' actions were willful. There is no evidence to support the fact that Defendants knew or showed reckless disregard for

the matter that their pay practices relative to Plaintiff were unlawful. <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988). Rather, the evidence clearly demonstrates Defendants' good faith belief that Plaintiff was a managerial employee, including documents created by Plaintiff where he identifies himself as a manager and/or an executive. Accordingly, any and all FLSA claims under a three-year limitations period on the grounds that Defendants' actions were willful should also be dismissed.

## STATEMENT OF FACTS

Defendants refer the Court to their Rule 56.1 Statement of Facts for a detailed recitation of the facts and citations. Defendants summarize the facts in this brief. Defendant Panda Jive, Inc. d/b/a Penelope ("Penelope") is a highly regarded café, bakery, and bar located at 159 Lexington Avenue, New York, New York which was opened for business in July 2003 by owner Jennifer Potenza ("Potenza"). Penelope's management consists of a General Manager, a Kitchen Manager and an Assistant General Manager to run the restaurant's operations. The restaurant has a kitchen staff which consists of line cooks, "prep" workers, and dishwashers, and a "front-end" staff which consists of servers/waiters, busboys, hosts and hostesses.

In July 2003, Potenza hired Plaintiff Joel Chavez ("Plaintiff" or "Joel") and his brother, Javier Chavez ("Javier"), to be the Kitchen Managers. Plaintiff served as the night Kitchen Manager and Javier served as the day Kitchen Manager. As Kitchen Manager, Plaintiff's duties were to supervise kitchen employees and be responsible for the kitchen's operations. As Kitchen Manager, Plaintiff's duties included hiring kitchen employees. Plaintiff did not need Potenza's permission to hire kitchen employees. In fact, when Plaintiff did notify Potenza about a potential

3

hire, Potenza never prevented Plaintiff from hiring the individual.  As Kitchen Manager, Plaintiff's duties also included firing kitchen employees, training kitchen employees, and scheduling kitchen employees.   Furthermore, Plaintiff was also authorized to and did in fact discipline kitchen employees.

Plaintiff was part of Penelope's management team which consisted of the General Manager, Kitchen Manager, and Assistant Kitchen Manager who all report to Potenza.  Potenza had weekly Kitchen Manager meetings with Plaintiff and Javier who together briefed Potenza as to how the kitchen was operating.  Over time, Plaintiff was responsible of handling payroll each week and determined how many hours each kitchen employee worked and therefore how much they should get paid.  Since at least December 2009, Plaintiff received a salary of $ 704.24 gross pay per week, thus exceeding the minimum required salary $ 455.00 gross pay per week needed to be considered "exempt" under 29 U.S.C. § 213(a)(1).

In 2003, there were about six (6) kitchen employees.  In 2004, there were about ten (10) kitchen employees.  In 2005, there were about fifteen (15) or sixteen (16) kitchen employees.  In 2006, there were about nineteen (19) kitchen employees.  In 2010, there were also about nineteen (19) kitchen employees.  Currently, there are approximately twenty (20) kitchen employees.

Plaintiff and his brother Javier worked as Kitchen Managers until December 2006 when Plaintiff left Penelope temporarily to return to Mexico.  On or about August 2007, Plaintiff returned to Penelope to be the Bakery Manager.  Plaintiff shared Bakery Manager duties with Defendant Lukus Hasenstab ("Hasenstab") until December 2007 when Hasenstab became the General Manager.  Plaintiff remained as the sole Bakery Manager.  As Bakery Manager, Plaintiff

4

supervised two (2) kitchen employees.  As Bakery Manager, Plaintiff's duties were to oversee the bakery operations including hiring, firing, training and scheduling his employees, as well as ordering supplies.

In September 2009 while Plaintiff was Bakery Manager, Plaintiff was approached by kitchen employees who complained to him about the then-existing Kitchen Managers, Gabriel Galvez Reyes and Abundio Galvez Reyes.  The kitchen employees complained to Plaintiff because they knew that he was the former Kitchen Manager, trusted him, and also knew that he had a close relationship with Potenza.  Plaintiff then relayed the complaints to Potenza who held a meeting in September 2009 with Penelope's managers - the Kitchen Managers Gabriel Galvez Reyes and Abundio Galvez Reyes, General Manager Hasenstab, Assistant General Manager Allison Garskof and the Plaintiff as Bakery Manager - to discuss the problems.

At the September 2009 meeting, Potenza reiterated the duties of a Kitchen Manager which included hiring, firing, scheduling, ordering supplies, and insuring that the kitchen was clean, safe and complying with the city's health codes.

During this time, Potenza met with Plaintiff, General Manager Hasenstab, and Assistant General Manager Allison Garskof to discuss future steps to better manage the kitchen.  In particular, Plaintiff was assigned to develop a kitchen employee manual to better define kitchen employee roles and to improve lines of communication.

When the problems with then-Kitchen Managers Gabriel Galvez Reyes and Abundio Galvez Reyes did not improve, Potenza held a general meeting of the kitchen employees and all the managers in December 2009 to announce that Plaintiff was going to be the new Kitchen

Manager at Penelope. Potenza declared that Plaintiff will be "overseeing the general operation of the entire kitchen." Potenza had increased expectations and duties for Plaintiff and considered him to be the Executive Kitchen Manager. In addition to hiring, firing, training, scheduling, disciplining employees and handling payroll, Plaintiff was now responsible for working on the kitchen employee manual, overseeing the efficient operation of the kitchen, minimizing costs and waste, overseeing internal health inspections, monitoring food consistency, food product ordering, and overseeing the food preparation schedule.

Plaintiff willingly accepted his new role as Penelope's Executive Kitchen Manager and agreed with Potenza's decision to appoint him as such. He received a pay increase and identified himself on his Facebook page as "Executive Chef" at Penelope.

In April 2010, Potenza became concerned about Plaintiff's performance as Executive Kitchen Manager. As a result, Potenza met with Penelope's managers – Plaintiff, General Manager Hasenstab, and Assistant General Manager Garskof – to discuss Plaintiff's performance. Potenza discussed the importance of Plaintiff's posting an accurate schedule, his conducting weekly health inspections of the kitchen and stock areas, better defining who the head line cook is during each shift, working with Garskof to systematize the ordering of supplies, and continuing to work on the kitchen manual.

During his time at Penelope, Plaintiff never complained about his title and duties as Kitchen Manager or Bakery Manager. In total, Plaintiff served as a manager three different times – as a night Kitchen Manager from 2003 to 2006, as a bakery manager from 2007 to 2009, and as "executive Kitchen Manager" from 2009 to 2011. Since at least December 2009, Plaintiff

6

received a salary of $ 704.24 gross pay per week.

Moreover, when Plaintiff prepared the kitchen employee manual, he diagrammed the chain of command in the kitchen area in which he identified himself as "Kitchen Manager" who is superior to and managing other kitchen employees.  As part of the manual, Plaintiff also prepared individual job descriptions for each kitchen employee which showed that each employee reports to Plaintiff.  Plaintiff prepared the substance of the kitchen manual himself in Spanish and Hasenstab arranged for the manual to be translated into English by another individual.  Plaintiff did not translate the kitchen manual.

Like all other managers, Plaintiff was required to obtain a food safety certificate.  As a result of obtaining the food safety certificate, Plaintiff as Kitchen Manager was responsible for overseeing internal health inspections.  Consistent with his managerial duties, Penelope offered to pay for Plaintiff to take restaurant-related management classes.  However in September 2010, Plaintiff sought to take certain business management classes which Defendants were not able to afford.  Like other managers, Plaintiff was also offered health insurance.  However, Plaintiff was not able to obtain health insurance because Potenza was concerned that Plaintiff may not have had a valid social security number.  Like other managers, Plaintiff received one (1) week vacation each year.

Hasenstab was hired at Penelope in March 2004 as a server/waiter and later became the Bakery Manager.  Hasenstab shared Bakery Manager duties with Plaintiff when Plaintiff returned to Penelope in August 2007.   In December 2007, Hasenstab became Penelope's General Manager.  As General Manager, Hasenstab is empowered to hire, fire, train, schedule and handle

7

the payroll for Penelope's "front-end" staff which consists of servers/waiters, busboys and hosts/hostesses.  Hasenstab did not sign any employees' paychecks.

Hasenstab does not have and never had authority to hire, fire, schedule or set the pay for Plaintiff or any other management personnel at Penelope.  As the owner, only Potenza had the authority and only she was responsible for hiring, firing, scheduling and setting the pay rates of all management personnel, including Plaintiff.  Hasenstab also is not a principal or officer of Penelope which would grant him the authority to hire, fire, schedule, or set the pay for managers at Penelope.  As General Manager, Hasenstab worked with the other managers to oversee the restaurant operations as a whole, but Hasenstab did not supervise the kitchen employees which was done by Plaintiff as Kitchen Manager.

Potenza also evaluated the performance of Kitchen Managers and on or about August 1, 2011, Potenza decided to terminate Plaintiff for poor performance.  Potenza first discussed Plaintiff's poor performance with Hasenstab in December 2010.  Plaintiff's poor performance as Kitchen Manager included his failure to conduct internal health inspections which resulted in two (2) failed Department of Health inspections, failure to schedule kitchen employees properly, failure to "improve communication" between kitchen employees and management, failure to "[i]mprove quality and general consistency of food," and failure to maintain standards of cleanliness and food safety in the kitchen.

As a result of Plaintiff's poor performance, Potenza asked Hasenstab to undertake a search for a new Kitchen Manager in December 2010.  Defendants posted for a new Kitchen Manager as early as January or February 2011.  Hasenstab also believed that Plaintiff should be terminated

because of poor performance but the decision to terminate was made by Potenza.

During his employment, Plaintiff never complained about his pay rate or that he should receive overtime until his allegations in this Complaint.

## ARGUMENT

I.  ## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED

Defendants move for summary judgment to dismiss all of Plaintiff's claims as a matter of law because there is no genuine issue of any material fact in dispute that pursuant to 29 U.S.C. § 213(a)(1), Plaintiff was an exempt employee "employed in a bona fide executive... capacity." As a result, Plaintiff is not entitled to any claim for overtime compensation and liquidated damages pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), New York Labor Law and 12 NYCRR § 142-2.2.

Defendants also move for summary judgment to dismiss all claims against individual Defendant Hasenstab as a matter of law because there is no genuine issue of material fact in dispute that pursuant to the "economic reality test" applied by the Courts in this Circuit, Hasenstab was *__not__* an employer as defined by the FLSA.  Carter v. Dutchess Community College, 735 F.2d 8 (2nd Cir. 1984).

Finally, Defendants move for summary judgment to bar any FLSA claims may have under a three-year limitations period under the grounds that Defendants' actions were willful.  There is no evidence to support the fact that Defendants knew or showed reckless disregard for the matter

9

that their pay practices relative to Plaintiff were unlawful.  <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988).

## *Legal Standard*

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); also see <u>Kelly v. City of Mount Vernon</u>, 162 F.3d 765, 768 (2nd Cir. 1998).

### *Exempt Employee*

The overtime compensation requirements set forth in the FLSA "shall not apply with respect to… any employee in a bona fide executive… capacity." 29 U.S.C. § 213(a)(1).  This "executive" exemption applies to any employee:

> (1) [c]ompensated on a salary basis at a rate of not less than $ 455 per week…;
> (2) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department of subdivision thereof;
> (3) [w]ho customarily and regularly directs the work of two or more other employees; and
> (4) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  The exemption is not determined by job title alone but rather by the employee's salary and duties.  29 C.F.R. § 541.2; <u>Auer v. Robbins</u>, 519 U.S. 452 (1997). "However, in the Second Circuit, employers bear the burden of proof to establish an exemption only by a preponderance of the evidence.'" <u>Golden v. Merrill Lynch & Co.</u>, 2007 U.S. Dist. LEXIS 90106 at *17 (S.D.N.Y. Dec. 6, 2007); <u>Ramos v. Baldor Specialty Foods, Inc.</u>, 2011 U.S. Dist. LEXIS 66631 at *9 (S.D.N.Y. June 16, 2011).

Finally, "(b)ecause the 'New York Labor Law 'applies the same exemptions as the

FLSA,'' <u>Henderson v. Transp. Grp., Ltd.</u>, 2010 U.S. Dist. LEXIS 66109 at *1 n.1 (S.D.N.Y. July 1, 2010)(quoting <u>Reiseck v. Universal Commc'ns of Miami, Inc.</u>, 591 F.3d 101, 105 (2nd Cir. 2010)),…'the ensuing analysis… applies equally' to Plaintiffs' NYLL claims." <u>Ramos v. Baldor Specialty Foods, Inc.</u>, 2011 U.S. Dist LEXIS 66631 at *12-13, n.3.

### *Employment Relationship*

The question of whether an individual is considered an employer is determined by whether the "alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 139 (2nd Cir. 1999).

> Under the "economic reality" test, the relevant factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."

<u>Herman</u> at 139 citing <u>Carter v. Dutchess Community College</u>, 735 F.2d 8, 12 (2nd Cir. 1988).

### *Willfulness*

Whether an employer's actions were willful under the FLSA is determined by if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988). "Reckless disregard… involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." <u>Damassia v. Duane Reade, Inc.</u>, 2005 U.S. Dist. LEXIS 9768, at * 7 n.2 (S.D.N.Y. 2005).

### *Plaintiff Was an Exempt Employee Who is Not Covered Under the FLSA or NYLL*

An examination of the instant facts demonstrate clearly that more than the required preponderance of evidence show that Plaintiff as Kitchen Manager was an exempt employee who is not covered under the FLSA or NYLL and therefore, not entitled to the overtime pay relief he is seeking in the Complaint.

### *Salary Basis*

At least since December 2009, Plaintiff was compensated on a salary basis at a rate of $ 704.24 gross pay per week which is more than the required $ 455.00 gross pay per week for Plaintiff to be considered exempt under 29 U.S.C. § 213(a)(1). (Potenza Declaration); (Hasenstab Declaration); (Exhibit 5 showing salary designation and weekly gross earnings of $ 704.24 per week since pay week 53 with check date December 29, 2009).

### *Primary Duty to Manage Enterprise or Department; Also, Plaintiff Had Authority to Hire, Fire Employees and Other Managerial Duties*

As Kitchen Manager and Executive Kitchen Manager, Plaintiff's primary duties were to manage the kitchen and during his time as Bakery Manager, Plaintiff's primary duties were to manage the bakery.  Furthermore, Plaintiff clearly had the authority to hire, fire, discipline and schedule employees as Kitchen Manager and Bakery Manager and his suggestions and recommendations regarding such or any other change of status of other employees were given weight by the owner Potenza.

In July 2003, Potenza hired Plaintiff and his brother Javier to be Kitchen Managers who would manage the kitchen operations and supervise kitchen employees which Plaintiff did during his tenure as Kitchen Manager.  (Potenza Declaration); (Hasenstab Declaration); (Exhibit 1:

12

Transcript of Jennifer Potenza, page 31, line 22 to page 32, line 14); (Exhibit 6, page 15, line 24 to page 17, line 24).  Plaintiff served as the night Kitchen Manager and Javier served as the day Kitchen Manager.  (Potenza Declaration); (Exhibit 1, page 32, lines 4-10).

Plaintiff was part of Penelope's management team which consisted of the General Manager, Kitchen Manager, and Assistant Kitchen Manager who all report to Potenza.  (Potenza Declaration); (Declaration of Defendant Lukus Hasenstab).  Plaintiff met with Potenza during weekly Kitchen Manager meetings and briefed Potenza as to how the kitchen was operating.  (Exhibit 1, page 32, lines 13-14); (Potenza Declaration).

Plaintiff's duties included hiring kitchen employees. (Potenza Declaration); (Exhibit 1, page 32, lines 6-14; page 49, line 24 to page 50, line 16; page 76, lines 15-19); (Exhibit 2: Transcript of Lukus Hasenstab, page 28, line 19 to page 29, line 16; page 32, lines 3-6; page 57, line 24 to page 59, line 7; page 96, line 24 to page 97, line 12).  Plaintiff did not need Potenza's permission to hire kitchen employees.  (Potenza Declaration); (Exhibit 1, page 50, line 24 to page 51, line 6); (Exhibit 2, page 57, line 17 to page 59, line 7; page 96, line 24 to page 97, line 12).  In fact, when Plaintiff did notify Potenza about a potential hire, Potenza never prevented Plaintiff from hiring the individual.  (Exhibit 1, page 51, lines 13-23).

As Kitchen Manager, Plaintiff's duties also included firing kitchen employees.  (Potenza Declaration); (Exhibit 1, page 32, lines 6-14); (Exhibit 2, page 96, line 24 to page 97, line 12; page 100, line 7 to page 101, line 5).  As Kitchen Manager, Plaintiff's duties included training kitchen employees. (Potenza Declaration); (Exhibit 1, page 32, lines 6-14); (Exhibit 2, page 96, line 24 to page 97, line 12; page 101, lines 8-16).  As Kitchen Manager, Plaintiff's duties included

13

scheduling kitchen employees.   (Potenza Declaration); (Exhibit 1, page 32, lines 6-14); (Exhibit 2, page 36, lines 4-19; page 37, lines 6-14; page 135, lines 2-10); (Exhibit 3: Plaintiff's Emails Setting Schedules of Kitchen Employees).  Plaintiff was also authorized to and did in fact discipline kitchen workers.  (Exhibit 2, page 23, lines 8-15; page 97, lines 13-21; page 100, line 7 to page 101, line 5); (Hasenstab Declaration).  Over time, Plaintiff was responsible of handling payroll each week and determined how many hours each kitchen employee worked and therefore how much they should get paid.  (Potenza Declaration); (Exhibit 1, page 72, lines 9-16); (Exhibit 4: Plaintiff's Emails Directing Kitchen Employees' Pay); (Exhibit 2, page 17, line 3 to page 18, line 24; page 36, lines 4-19).

After Plaintiff took a break to visit Mexico in December 2006, he returned in August 2007 to become the Bakery Manager. (Potenza Declaration); (Hasenstab Declaration); (Exhibit 7: 9/17/09 Kitchen Meeting Notes referring to Plaintiff as "Head Baker," written by Jennifer Potenza).   Plaintiff shared Bakery Manager duties with Hasenstab until December 2007 when Hasenstab became the General Manager.  Plaintiff remained as Penelope's sole Bakery Manager. (Hasenstab Affidavit).  As Bakery Manager, Plaintiff's duties were to oversee the bakery operations including hiring, firing, training and scheduling his employees, as well as ordering supplies.  (Exhibit 2, page 104, lines 17-22); (Exhibit 1, page 64, lines 16-23; page 66, lines 6-11; page 68, lines 6-10); (Potenza Declaration); (Hasenstab Declaration).

On September 17, 2009, Potenza held a meeting with the then-existing Kitchen Managers Gabriel Galvez Reyes and Abundio Galvez Reyes, General Manager Hasenstab, Assistant General Manager Allison Garskof and the Plaintiff to discuss the kitchen employees' complaints about

14

how the kitchen was being managed.  (Exhibit 1, page 101, line 20 to page 103, line 4); (Exhibit

6, page 132, line 5 to page 133, line15); (Exhibit 7); (Potenza Declaration); (Hasenstab

Declaration).   The September 17, 2009 Kitchen Meeting Notes written by Potenza identified

Plaintiff as "the former kitchen manager, head baker, representing a majority of employees."

(Exhibit 7, Page 1).   Potenza also wrote that "[b]eing the head of a kitchen is a big

responsibility…. There are specific true responsibilities, such as hiring/firing, the schedule,

ordering, keeping up with the health codes, and making sure that everything operates smoothly

with competent systems."  (Exhibit 7, Page 2).

During this time, Potenza met with Plaintiff, Hasenstab and Garskof to discuss future steps

to better manage the kitchen.  (Exhibit 8: 12/14/09 Kitchen Meeting Notes written by Jennifer

Potenza, see Exhibit 1, page 100, line 19 to page 101, line 14); (Potenza Declaration).

When the problems with the management of the kitchen did not improve, Potenza held a general

meeting of the kitchen employees and Penelope's managers on December 14, 2009 to announce

that Plaintiff was going to be the new Kitchen Manager at Penelope.  (Exhibit 1, page 62, line 23

to page 63, line 15; page 106, line 18 to page 107, line 10); (Exhibit 8: 12/14/09 Kitchen Meeting

Notes written by Jennifer Potenza); (Potenza Declaration).

Potenza wrote in the December 14, 2009 Kitchen Meeting Notes that "[o]ne of the first

changes will be regarding the head of the kitchen….   Your new kitchen manager will be [Plaintiff]

Joel Chavez.  For those of you don't know, Joel was the original manager when we first opened

Penelope….   We are excited to give him the opportunity of being your leader and the

representative of the entire kitchen."  (Exhibit 8, Page 1).  Potenza also wrote that "[Plaintiff] will

15

be overseeing the general operation of the entire kitchen." (Exhibit 8, Page 1). "This means that [Plaintiff] Joel is your voice… and we look forward to you all having a fair representation of your kitchen." (Exhibit 8, Page 1).

In re-appointing Plaintiff as Kitchen Manager, Potenza had increased expectations and duties for Plaintiff, including "overseeing the general operation of the entire kitchen." (Exhibit 1, page 53, lines 2-23; page 125, lines 15-24); (Exhibit 8); (Potenza Declaration). In addition to hiring, firing, training, scheduling, disciplining employees and handling payroll, Plaintiff was now responsible for working on the kitchen employee manual, overseeing the efficient operation of the kitchen, minimizing costs and waste, overseeing internal health inspections, monitoring food consistency, food product ordering, and overseeing the food preparation schedule. (Exhibit 1, page 125, line 25 to page 127, line 19; page 77, line 20 to page 78, line 16); (Exhibit 2, page 70, line 8 to page 71, line 22; page 97, lines 5-12); (Exhibit 9: 4/27/10 Kitchen Meeting Notes written by Potenza); (Potenza Declaration); (Exhibit 18).

Essentially, Potenza considered Plaintiff to be an Executive Kitchen Manager. (Exhibit 1, page 52, lines 16-17; page 60, lines 11-16; page 141, lines 21-22); (Potenza Declaration). Plaintiff acknowledged that he became Penelope's Kitchen Manager after December 2009. (Exhibit 6, page 145, lines 20-25; page 216, lines 6-15). Plaintiff agreed with Potenza's decision to appoint as the Kitchen Manager. (Exhibit 6, page 139, lines 6-20). In fact, when Plaintiff prepared the kitchen employee manual, he diagrammed the chain of command in the kitchen area in which he identified himself as "Kitchen Manager" who is superior to and managing other kitchen employees. (Exhibit 11: Kitchen Employee Manual Draft Excerpts). Plaintiff also

16

prepared and defined the individual job descriptions for each kitchen employee which show that each employee reports to Plaintiff. (Exhibit 11, on each job description, the employee "[r]eporta a Joel"). Plaintiff prepared the substance of the kitchen manual himself in Spanish and Hasenstab arranged for the manual to be translated into English by another individual. Plaintiff did not translate the kitchen manual. (Exhibit 12); (Exhibit 2, page 128, lines 7-13; page 131, line 3 to page 132, line 15); (Hasenstab Declaration).

In April 2010, Potenza became concerned about Plaintiff's performance as Executive Kitchen Manager. (Potenza Declaration). As a result, Potenza held an April 27, 2010 managerial meeting with Plaintiff, Hasenstab, and Garskof to review Plaintiff's performance. (Potenza Declaration); (Exhibit 9). Potenza wrote in her April 27, 2010 Manager Meeting Notes that she directed Plaintiff to "(a)lways take an opportunity to correct and educate members of the kitchen staff when potential (or actual) violates are spotted. As the Kitchen Manager you are ultimately responsible for the state of the kitchen, it is in your best interest for everyone working to know as much as possible about health, cleanliness, and the rules." (Exhibit 9, Page 2). Potenza also told Plaintiff and wrote in the April 27, 2010 Manager Meeting Notes that "(a)s kitchen manager it is your job to recognize who works well, and where." (Exhibit 9, Page 2). Finally, Potenza concluded at the meeting and wrote in the April 27, 2010 Manager Meeting Notes that "(t)he effort to do things like controlling food costs, or kitchen efficiency, or restaurant cleanliness requires a team effort from the entire management staff. It is important that we all work together." (Exhibit 9, Page 2).

Plaintiff never complained about his title and duties as Kitchen Manager and even

17

identified himself on his Facebook profile as "Executive Chef" at Penelope.  (Exhibit 6, page 146, lines 2-20; page 202, lines 11-22; page 216, lines 6-15); (Potenza Declaration); (Exhibit 10).

Thus, in total, Plaintiff served as a manager three different times – as a night Kitchen Manager from 2003 to 2006, as a bakery manager from 2007 to 2009, and as "executive Kitchen Manager" from 2009 to 2011.  (Exhibit 1, page 52, lines 13-17); (Exhibit 2, page 91, line 6 to page 92, line 14).

Like all other managers, Plaintiff was required to obtain a food safety certificate.  (Exhibit 1, page 79, lines 10-17); (Exhibit 2, page 117, lines 9-21); (Exhibit 6, page 176, lines 15-22; page 179, lines 22-23); (Potenza Declaration); (Hasenstab Declaration).  As a result of obtaining the food safety certificate, Plaintiff as Kitchen Manager was responsible for overseeing internal health inspections.  (Exhibit 2, page 70, line 8 to page 71, line 22; page 73, line 18 to page 74, line 12); (Potenza Declaration); (Hasenstab Declaration).  Consistent with Plaintiff's managerial duties, Penelope offered to pay for Plaintiff to take restaurant-related managerial classes.  (Potenza Declaration).  However in September 2010, Plaintiff sought to take specific business management classes for which Penelope could not afford to pay.  (Exhibit 13); (Exhibit 6, page 185, line 2 to page 186, line 7); (Hasenstab Declaration); (Potenza Declaration).

Like other managers, Plaintiff was also offered health insurance.  However, Plaintiff was not able to obtain health insurance because Potenza was concerned that Plaintiff may not have had a valid social security number.  (Exhibit 1, page 124, line 11 to page 125, line 16; page 141, line 17 to page 143, line 15); (Potenza Declaration).  Finally, like other managers, Plaintiff received one (1) week of vacation each year.  (Exhibit 2, page 108, lines 8-17); (Exhibit 1, page 78, line 23

18

to page 79, line 6); (Exhibit 6, page 41, lines 10-21); (Potenza Declaration).

When Plaintiff was terminated by Potenza in August 2011, the reasons were due to his failure to perform the managerial duties expected of him: Plaintiff's failure to and oversee conduct internal health inspections in the kitchen which resulted in two (2) failed Department of Health inspections, failure to schedule kitchen employees properly, failure to "improve communication" between kitchen employees and management, failure to "[i]mprove quality and general consistency of food," and failure to maintain standards of cleanliness and food safety in the kitchen.  (Exhibit 2, page 126, lines 3-17); (Exhibit 15).

The Department of Labor regulations define "management" to include, but be not limited to, activities such as "selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees;… disciplining employees; planning the work; apportioning the work among the employees; determining the type of materials… to be used or… stocked…; providing for the safety and security of employees…;… and monitoring or implementing legal compliance measures." 29 C.F.R. § 541.102.  An examination of the above facts demonstrates that there is a preponderance of evidence that Plaintiff's duties were those contemplated in the Department of Labor regulations.

Clearly, Plaintiff's duties were primarily to manage the kitchen as Kitchen Manager and manage the bakery as the Bakery Manager.  Furthermore, there is also a preponderance of evidence that Plaintiff had the authority to hire or fire employees.

### *Directing the Work of Two or More Employees*

Plaintiff also directed the work of two or more employees during his time as Kitchen

19

Manager and as Bakery Manager. In 2003, there were about six (6) kitchen employees. In 2004, there were about ten (10) kitchen employees. In 2005, there were about fifteen (15) or sixteen (16) kitchen employees. In 2006, there were about nineteen (19) kitchen employees. (Exhibit 6, page 43, lines 7-10, page 44, lines 2-6; page 56, lines 22-25; page 59, lines 22-25). After Plaintiff returned to being the Kitchen Manager after December 2009 and the start of 2010, there were nineteen (19) kitchen employees. (Exhibit 6, page 149, lines 4-8). Currently, there are approximately twenty (20) kitchen employees. Clearly as Kitchen Manager, Plaintiff's managerial duties required him to supervise the work of two (2) or more employees.

As Bakery Manager from August 2007 to about December 2009, Plaintiff supervised two (2) kitchen employees. (Exhibit 1, page 43, lines 15-19); (Potenza Declaration).

Consequently, Plaintiff has satisfied all of the criteria set forth in 29 C.F.R. § 541.100(a) which define an "employee in a bona fide executive... capacity." 29 U.S.C. § 213(a)(1). By more than the required preponderance of evidence, Defendants satisfy the duties test set forth in the Department of Labor regulations. Furthermore, by more than a preponderance of evidence, Defendants also satisfy the salary basis test at least from December 2009.

Therefore, Defendants are entitled to summary judgment on the grounds that Plaintiff was an exempt employee in a "bona fide executive... capacity" who is not eligible for overtime compensation under the FLSA or NYLL. 29 U.S.C. § 213(a)(1); Henderson v. Transp. Grp., Ltd., 2010 U.S. Dist LEXIS 66109 at *1 n.1 (S.D.N.Y. July 1, 2010)(quoting Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105 (2nd Cir. 2010)); Ramos v. Baldor Specialty Foods, Inc., 2011 U.S. Dist LEXIS 66631 at *12-13, n.3.

20

## *Hasenstab is Not Liable as an Individual Defendant*

An examination of the facts also demonstrate that individual Defendant Hasenstab is not liable as an employer because he did not "[possess] the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2nd Cir. 1999).  The "economic reality" test examines "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Herman at 139 citing Carter v. Dutchess Community College, 735 F.2d 8, 12 (2nd Cir. 1988).

The preponderance of the evidence shows that Hasenstab ***did not*** have authority to hire, fire, or set the schedules or pay rates of other managers such as Plaintiff.  Nor did Hasenstab sign any employees' paychecks, let alone managers' paychecks.  (Exhibit 2, page 16, line 20 to page 17, line 2); (Hasenstab Declaration); (Potenza Declaration).

Rather, as one of the owners of Penelope, Potenza was responsible for hiring, firing, scheduling and setting the pay rates of all management personnel, including Plaintiff.  (Potenza Declaration); (Hasenstab Declaration); (Exhibit 1, page 62, line 18 to page 63, line 15; page 107, lines 6-10; page 151, lines 12-15); (Exhibit 2, page 64, line 16 to page 65, line 5).  Potenza also evaluated the performance of Kitchen Managers.  (Exhibit 1, page 69, line 24 to page 70, line 6).

Even if Plaintiff were a non-managerial kitchen employee rather than a Kitchen Manager which Plaintiff clearly was, Hasenstab did not even directly supervise the kitchen employees. (Exhibit 1, page 25, line 22 to page 26, line 6; page 35, lines 6-9; page 36, lines 4-5; page 37, lines

7-8); (Hasenstab Declaration).  Plaintiff knew better than any other manager which employees
came to work in the kitchen each day.  (Exhibit 1, page 21, lines 15-23; page 128, line 28 to page
129, line 10).

Hasenstab also is not a principal or officer of Penelope which would grant him the
authority to hire, fire, schedule, or set the pay for managers at Penelope.  (Exhibit 1, page 76, line
20 to page 77, line 7); (Exhibit 2, page 32, lines 16-25); (Hasenstab Declaration); (Potenza
Declaration).   Finally, on August 1, 2011, it was Potenza who decided to terminate Plaintiff for
poor performance.  (Exhibit 2, page 125, lines 6-17; page 167, lines 16-19; page 169, lines 15-16);
(Exhibit 15); (Potenza Declaration); (Hasenstab Declaration).

As a result, the preponderance of evidence establishes that Defendant Hasenstab is not an
employer under the "economic reality" test.  Therefore, even if Plaintiff were a non-exempt
employee eligible for overtime compensation under the FLSA or NYLL", because Hasenstab does
not "[possess] the power to control the workers in question," he cannot be individually liable in
this matter.   Consequently, Defendants are entitled to summary judgment on all of Plaintiff's
claims against individual Defendant Hasenstab.


### *No Evidence to Support Plaintiff's Claims that Defendants' Actions were Willful*

An employer willfully violates the FLSA only if it "either knew or showed reckless
disregard for the matter of whether its conduct was prohibited by statute." McLaughlin v.
Richland Shoe Co., 486 U.S. 128, 133 (1988).  "Reckless disregard… involves actual knowledge
of a legal requirement, and deliberate disregard of the risk that one is in violation." Damassia v.

22

Duane Reade, Inc., 2005 U.S. Dist. LEXIS 9768, at * 7 n.2 (S.D.N.Y. 2005).  "A willful violation requires more than mere negligence."  Clarke v. J.P. Morgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 33264 at * 28 (S.D.N.Y. 2010) (citing Damassia, at *7 n.2: "[P]laintiffs must prove more than that defendant 'should have known' it was violating the law."; El v. Potter, 2004 U.S. Dist. LEXIS 24447, at *15 (S.D.N.Y. 2004): "Willfulness cannot be found where the employer acted negligently or assumed in good faith, but incorrectly, that its conduct complied with the FLSA.") "Further, an employer does not willfully violate the FLSA even if it acted 'unreasonably, but not recklessly, in determining its legal obligation.'"  Clarke at * 28 citing McLaughlin, 486 U.S. at 135, n. 13.

Moreover, the employee bears the burden of proving willfulness.  Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2nd Cir. 2009); Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2nd Cir. 1999).  Thus, a "factual showing" of an employer's knowing or reckless violation of the FLSA is required to prove willfulness.  Saunders v. City of New York, F.Supp.2d 346, 358 (S.D.N.Y. 2008).  Therefore, a FLSA plaintiff seeking a three-year limitations period cannot survive a motion for summary judgment unless he "make[s] a competent demonstration that there [is a] trial worthy issue as to whether [the employer] 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.  Clarke, at * 29 (citation omitted).

By all accounts, there is not a scintilla of evidence that any alleged violation committed by Defendants – which there was none – was in any way willful.  First, Defendants have always identified Plaintiff as a Kitchen Manager, Bakery Manager, and even an Executive Kitchen Manager which is reflected in their testimony and their own internal documents.  (Potenza

Declaration); (Hasenstab Declaration); (Exhibit 1, page 31, line 22 to page 32, line 14; page 52, lines 16-17, page 53, lines 2-23; page 60, lines 11-16; page 62, line 23 to page 63, line 15; page 64, lines 16-23; page 66, lines 6-11; page 68, lines 6-10; page 106, line 18 to page 107, line 10; page 125, lines 15-24; page 141, lines 21-22);  (Exhibit 2, page 104, lines 17-22) (Exhibit 7); (Exhibit 8); (Exhibit 9)

Secondly, Plaintiff himself acknowledged that he became Penelope's Kitchen Manager after December 2009.  (Exhibit 6, page 145, lines 20-25; page 216, lines 6-15).  Moreover, in the kitchen manuals he created, Plaintiff identified himself as "Kitchen Manager" who is superior to and managing other kitchen employees.  (Exhibit 11).  Plaintiff even identified himself on his Facebook page as "Executive Chef" at Penelope. (Exhibit 10).   In addition, during his time at Penelope, Plaintiff never complained about his title and duties as Kitchen Manager.  (Exhibit 6, page 146, lines 2-20; page 202, lines 11-22; page 216, lines 6-15); (Potenza Declaration).

Finally, Defendants always had posters in the kitchen informing employees about their right to be paid minimum wage and overtime compensation.  (Exhibit 2, page 87, line 19 to page 88, line 11); (Potenza Declaration); (Hasenstab Declaration).

Plaintiff cannot make any factual showing that would support his burden to prove Defendants' willfulness.  Actually, there is no evidence to support that Defendants in any way knew or showed reckless disregard for the matter that their pay practices relative to Plaintiff were unlawful.  This is particularly so where Plaintiff had been consistently identified as a manager over a period of eight (8) years by both Defendants and Plaintiff himself.  Rather, the evidence shows that Defendants treated Plaintiff like other managers at Penelope and in good faith,

believed that he was exempt from overtime compensation which he clearly was.

## CONCLUSION

In conclusion, the Defendants request the Court grant its motion for summary judgment and dismiss all of Plaintiff's claims in this action because:

1)      there is no genuine issue of material fact in dispute that pursuant to 29 U.S.C. § 213(a)(1), Plaintiff was an exempt employee "employed in a bona fide executive... capacity" and not entitled to any claim for overtime compensation and liquidated damages pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), New York Labor Law and 12 NYCRR § 142-2.2;

2)      there is no genuine issue of material fact in dispute that pursuant to the "economic reality test" applied by the Courts in this Circuit, Defendant Lukus Hasenstab was *not* an employer as defined by the FLSA, and therefore not subject to any liability. Carter v. Dutchess Community College, 735 F.2d 8 (2nd Cir. 1984); and

3)      there is no evidence to support any FLSA claims Plaintiff may have under a three-year limitations period on the grounds that Defendants' actions were willful.

Dated: March 30, 2012
Garden City, New York

Respectfully submitted,

S. TITO SINHA
Valli Kane & Vagnini, LLP
600 Old Country Road, Suite 519
Garden City, NY 11530
(516) 203-7180
(516) 706-0248 (fax)